IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICARDO LOPEZ-BETANCOURT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-11565 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| LOYOLA UNIVERSITY OF CHICAGO | ) | |
| STRITCH SCHOOL OF MEDICINE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION ORDER

*Pro se* Plaintiff Ricardo Lopez-Betancourt ("Plaintiff"), a former medical student, brings suit against Loyola University of Chicago Stritch School of Medicine ("Defendant" or "Loyola") for violations of Title III the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. This matter is before the Court on Defendant's motion to dismiss for failure to state a claim [19] and Plaintiff's motion for leave to file a surreply [29]. For the reasons explained below, Plaintiff's motion for leave to file a surreply [29] is granted and Defendant's motion to dismiss [19] is denied because the Court cannot determine based on the face of the complaint [8] that Plaintiff's claims are barred by the applicable statute of limitations. This case is set for status on January 11, 2018 at 9:00 a.m.

### I. Background[1]

While Plaintiff was a medical student at Loyola, he was diagnosed with Type 1 diabetes, celiac disease, and related physical and mental health conditions, which made it difficult for him to study for and pass the Step 1 exam that students are required to pass in order to advance at Loyola.

---

[1] For purposes of Defendant's motions to dismiss, the Court assumes as true all well-pled allegations set forth in the complaint [8]. See *Mutter v. Madigan*, 17 F. Supp. 3d 752, 756 (N.D. Ill. 2014).

In particular, Plaintiff first failed the Step 1 exam in August 2011. In November 2011, Associate Dean of Student Affairs James Mendez ("Dean Mendez") informed Plaintiff of a new rule that required all third-year medical students to pass the Step 1 exam by January 2012 in order to remain eligible to participate in clinical clerkships. Plaintiff failed the Step 1 exam again in June 2012, and a third time in May 2013.

In June 2013, Plaintiff received a letter informing him that he had been dismissed from Loyola for failing to pass the Step 1 exam in three attempts. Plaintiff appealed that decision. In July 2013, Loyola agreed to reinstate Plaintiff on the condition that he pass the Step 1 exam by December 31, 2013. Plaintiff was informed that a fourth failed attempt would result in an immediate dismissal with no right to appeal.

Plaintiff requested several extensions of this deadline and a leave of absence. Ultimately, Dean Mendez denied Plaintiff's request for a leave of absence. Plaintiff sat for the Step 1 exam for the fourth time on April 24, 2014, believing that it was his only chance to remain in medical school. Plaintiff failed the exam.

Plaintiff "was dismissed from Loyola on May 14, 2014, due to his failure to meet the conditions of his reinstatement—passing the Step 1 exam on his fourth attempt." [8] at 6. Dean Mendez contacted one of Plaintiff's "former classmate[s] via email on May 14, 2014, without [Plaintiff's] knowledge or consent, to inform him that [Plaintiff] had failed to pass the Step 1 exam in four attempts and had been dismissed from Loyola." *Id*. Plaintiff "received a phone call from Dean Sonntag on May 15, 2014, but was never informed of his enrollment status at any point during the conversation." *Id*.

Plaintiff "contacted Dean Mendez on May 16, 2014 to ask permission to retake the Step 1 exam since his health had significantly improved." [8] at 6. Plaintiff's doctors also sent a letter

2

to Dean Mendez in August 2014, describing the effects that his medical conditions had on his academic performance. On September 10, 2104, Plaintiff's "endocrinologist . . . contacted Loyola . . . to express her concerns that [Plaintiff's] dismissal from Loyola was the result of his various health conditions." *Id*.

Plaintiff "was not formally notified of his dismissal from Loyola effective May 14, 2014 until he requested a copy of his entire Loyola file in October 2014." [8] at 6. Plaintiff's attorney, Deborah Pergament of the Children's Law Group, sent a demand letter to Loyola's General Counsel on November 10, 2014. Loyola responded on December 23, 2014 by refusing to reinstate Plaintiff or to take actions that would enable him to sit for the Step 1 exam. Plaintiff's medical conditions are now under control, and Plaintiff desires to retake and pass the Step 1 exam.

Plaintiff filed suit against Loyola on December 22, 2016. See [1]. Plaintiff alleges that Loyola violated the ADA and the Rehabilitation Act by: 1) failing to grant him a leave of absence "to obtain the necessary medical and psychiatric treatment to allow him to effectively prepare for the Step 1 exam"; 2) failing to engage in the interactive process to identify other potential effective accommodations; 3) restricting his access to Loyola facilities and health care services; 4) "dismissing him in May 2014"; 5) "engaging in retaliatory conduct that consisted of failing to accommodate him and dismissing him from Loyola because he had previously asserted his rights under the ADA and Rehabilitation Act; and 6) refusing, in a letter from the Office of General Counsel dated December 23, 2014, to allow Plaintiff to be readmitted and allowed to retake the Step 1 exam. [8] at 9-10.

Plaintiff seeks injunctive relief ordering Loyola to, among other things, reinstate him and allow him to sit for the Step 1 exam following a six to eight week period of preparation. Plaintiff also seeks compensatory damages, costs, and attorneys' fees.

## II.     Motion for Leave to File Surreply

The Court grants Plaintiff's motion for leave to file a surreply, see [29], and considers the attached two-page surreply brief in its analysis below.

## III.    Motion to Dismiss

### A.     Legal Standard

A Rule 12(b)(6) motion challenges the legal sufficiency of the complaint. See Fed. R. Civ. P. 12(b)(6). For purposes of a motion to dismiss under Rule 12(b)(6), "the court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor." *Mutter*, 17 F. Supp. 3d at 756. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

It is "'a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (quoting *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989)); see also *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (recognizing "the axiomatic rule that a plaintiff may not amend his complaint in his

response brief"). Nonetheless, "[a] plaintiff need not put all of the essential facts in the complaint," and "may add them by affidavit or brief in order to defeat a motion to dismiss if the facts are consistent with the allegations of the complaint." *Help At Home Inc. v. Medical Capital, L.L.C.*, 260 F.3d 748, 752–53 (7th Cir. 2001) (copies of other writings between parties and affidavit, which were consistent with allegations of complaint, were properly considered by district court in considering motion to dismiss suit for breach of contract). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (internal quotation marks and citation omitted).

In this case, Defendant's motion to dismiss is based on Plaintiff's alleged failure to file his complaint within the time allowed by the applicable statute of limitations. "A limitations defense is not often resolved on a Rule 12(b)(6) motion because 'a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations.'" *Amin Ijbara Equity Corporation v. Village of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)). Dismissal at the motion to dismiss state is appropriate only "when the complaint alleges facts sufficient to establish that the suit is indeed tardy." *Id*.

### B. Analysis

Plaintiff brings his claims under the Rehabilitation Act and Title III of the ADA. The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Title III of the ADA provides that "[n]o individual

shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.§ 12182(a). For purposes of this provision, "discrimination" includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

The parties are in apparent agreement that a two-year statute of limitations applies to Plaintiff's ADA and Rehabilitation Act claims. See *Rutledge v. Illinois Dept. of Human Services*, 785 F.3d 258, 260 (7th Cir. 2015) (recognizing that "Illinois' two-year statute of limitations for personal-injury suits, 735 ILCS 5/13–202, . . . appl[ies] to suits filed in Illinois under section 504 of the Rehabilitation Act" (citing *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 n.5 (7th Cir. 2000))); *Scherr v. Marriot Int'l, Inc.*, 833 F. Supp. 2d 945, 956 (N.D. Ill. 2011) ("In the context of Title III ADA claims, the Seventh Circuit has invoked Illinois's two-year statute of limitations for personal injuries." (citing *Soignier v. American Bd. of Plastic Surgery*, 92 F.3d 547, 550 (7th Cir. 1996))).

The parties' only dispute concerns when Plaintiff's claims accrued and the statute of limitations began to run. In general, a "statute of limitations begins to run upon injury (or, as is standardly the case with federal claims, upon discovery of the injury) and is not tolled by subsequent injuries." *Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 801 (7th Cir. 2008).

Defendant takes the position that "[t]he statute of limitations began to run on [Plaintiff's claims] on May 16, 2014—the day Defendant allegedly denied Plaintiff's request for a leave of absence and additional time to pass the exam." [20] at 8 (citing Complaint ¶ 73). Defendant asserts that "[t]here can be no dispute that the most recent conduct giving rise to Plaintiff's claims is Defendant's final denial of Plaintiff's request for an accommodation: more time to take the Step 1 Exam on May 16, 2014." [20] at 9 (citing Complaint ¶ 72). According to Defendant, this case is governed by *Soignier v. American Bd. of Plastic Surgery*, 92 F.3d 547 (7th Cir. 1996), in which the Seventh Circuit held that a plastic surgeon's ADA suit against a certification board based on the board's alleged failure to accommodate his disabilities during the oral portion of his certification examination began to run when he took the oral exam for the fifth time, rather than when the internal appeals process was exhausted or when the board denied his request to take the oral exam a sixth time.

Plaintiff responds that the statute of limitations did not begin to run until Defendant "formally communicated" to Plaintiff that he was dismissed from the medical school. [29] at 2. According to Plaintiff, he "was never formally notified of his dismissal until he received the letter [from Defendant's General Counsel] dated December 23, 2014." *Id*. It is not clear from the complaint or declaration whether or when Plaintiff was "informally" notified of his dismissal prior to that date.

The Court cannot determine from the pleadings or the additional facts alleged by Plaintiff in his declaration that Plaintiff's claims are barred by the two-year statute of limitations. As an initial matter, it is not clear why Defendant believes that the relevant accrual date is May 16, 2014. The complaint does not allege that Plaintiff was denied his request for a leave of absence on May 16, 2014. Instead, May 16, 2014 is the date on which Plaintiff allegedly contacted Dean

7

Mendez and asked for permission to retake the Step 1 exam. It is not apparent from the complaint when (or if) Dean Mendez denied this request.

Perhaps Defendant intends to argue that Plaintiff's claims accrued on April 24, 2014, when Plaintiff took the Step 1 exam for the fourth time. In *Soignier*, on which Defendant relies, the date that the plaintiff took his oral certification exam without the requested accommodation was determined to be the date that his claim accrued. However, *Soignier*'s analysis is not clearly applicable to Plaintiff's claims. In that case, the plaintiff brought his claim under 42 U.S.C. § 12189, which provides that "[a]ny person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." See *Soignier*, 92 F.3d at 550. The Seventh Circuit explained that the plaintiff's claim accrued on the date that he took the exam without the accommodations that he requested, because by that date he "was aware of each of the elements of his ADA claim: (a) he was a qualified person with a disability; (b) the law required the Board to provide him with reasonable accommodations during the test; and (c) the Board allegedly failed to provide those accommodations." *Id*. at 553-54.

In this case, Plaintiff's claim is not (so far as the Court can tell) brought under 42 U.S.C. § 12189; instead, Plaintiff appears to be alleging more general failure to accommodate claims under Title III of the ADA, 42 U.S.C.§ 12182(a), and the Rehabilitation Act, 29 U.S.C. § 794(a). Under the ADA, the relevant question is when Plaintiff knew that he was being "discriminated against on the basis of disability," through Defendant's refusal to "make reasonable modifications in policies, practices, or procedures" to accommodate his alleged disability. 42

8

U.S.C. §§ 12182(a), 12182(b)(2)(A)(ii). Similarly, under the Rehabilitation Act, the relevant question is whether Plaintiff knew that he was being "denied the benefits of, or . . . subjected to discrimination" by Defendant solely because of his disability. 29 U.S.C. § 794(a).

The latest date that this could have occurred is the date on which Plaintiff learned that he was dismissed from Defendant's medical school program. See *Cordova v. University of Notre Dame Du Lac*, 936 F. Supp. 2d 1003, 1010-11 (N.D. Ind. 2013) (applying *Soignier* and holding that former student's ADA claims against university for failure to accommodate alleged cognitive learning disability and psychological disability accrued, and two-year limitations period began to run, when former student discovered that she had been expelled by university); cf. *Singh v. George Washington Univ. School of Med. & Health Sciences*, 597 F. Supp. 2d 89, 98 (Dist. D.C. 2009) ("If [a] request for reasonable accommodations is received prior to [a plaintiff's] official dismissal [from a defendant educational institution], defendant must consider it before issuing its final decision whether to dismiss the student.").

It is not clear from the face of the complaint when, exactly, Plaintiff learned that he was dismissed from Loyola. Although the complaint alleges that Plaintiff "was dismissed from Loyola on May 14, 2014, due to his failure to meet the conditions of his reinstatement—passing the Step 1 exam on his fourth attempt," other allegations suggest that Plaintiff did not *learn* of his dismissal until some later date. According to the complaint, Plaintiff was "never informed of his enrollment status" when he spoke with Dean Sonntag on May 15, 2014, Plaintiff contacted Dean Mendez on May 16, 2014 to request permission to retake the Step 1 exam, and Plaintiff's doctors sent letters to Defendant in August 2014 explaining how his medical conditions affected his academic performance. [8] at 6. These allegations suggest that Plaintiff believed that he and

Loyola were still engaging in the process of finding a reasonable accommodation to his disabilities.

To be sure, a few allegations in the complaint suggest that Plaintiff may have learned of his dismissal prior to his receipt of Defendant's General Counsel's letter on December 23, 2014. In particular, the complaint alleges that Plaintiff's endocrinologist contacted Defendant on September 10, 2014 "to express her concerns that [Plaintiff's] dismissal from Loyola was the result of his various health conditions." *Id*. The complaint also alleges that Plaintiff "was not formally notified of his dismissal from Loyola effective May 14, 2014 until he requested a copy of his entire Loyola file in October 2014." [8] at 6. But it is not clear why Plaintiff's endocrinologist believed that Plaintiff had been dismissed; nor is it clear when Plaintiff received the file that he requested from Loyola or whether it was apparent from the file that Plaintiff had been dismissed. Further, Defendant's motion does not address whether Plaintiff's claims might have been tolled under any applicable tolling doctrine. In short, the allegations concerning when Plaintiff learned of his dismissal are not so clear that they are "sufficient to establish that the suit is indeed tardy." *Amin*, 860 F.3d at 492.

## IV. Conclusion

For the reasons explained above, Plaintiff's motion for leave to file a surreply [29] is granted and Defendant's motion to dismiss [19] is denied. This case is set for status on January 11, 2018 at 9:00 a.m.

Dated: December 15, 2017

Robert M. Dow, Jr.
United States District Judge